UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BAKER & TAYLOR, INC. AND : <br> BAKER & TAYLOR FULFILLMENT, INC., : <br>     Plaintiffs, : <br> : <br> v. : <br> : <br> ALPHACRAZE.COM CORP., et al., : <br>     Defendants. : | CIVIL ACTION NO. <br> 3:07-cv-1851 (VLB) <br><br> August 6, 2008 |

## MEMORANDUM OF DECISION AND ORDER GRANTING THE AVERY DEFENDANTS' MOTION TO DISMISS [Doc. #28] AND DISMISSING ALL REMAINING CLAIMS

Presently pending before the court is defendants Allen and Laura Avery's motion to dismiss. The plaintiffs, Baker & Taylor, Inc. ("BTI") and Baker & Taylor Fulfillment, Inc. ("BTF") (collectively "B&T"), bring this breach of contract action against AlphaCraze.com Corp. ("AlphaCraze"), Michael Shelton, Brandi Shelton, Allen Avery, Laura Avery and Miguel Jaime. Allen and Laura Avery (collectively the "Avery defendants"), move to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons hereinafter set forth, the motion to dismiss is GRANTED. As further explained below, all of B&T's claims against every other defendant are barred for the same reasons and are also dismissed.

### I. Facts

The following facts included in the complaint or exhibits thereto are taken as true for purposes of this motion. AlphaCraze operates a website that sells

1

books, music, games, and other items over the internet.  In 1998, AlphaCraze began using BTI as a backroom supplier to fulfill its orders.  On February 1, 1999, AlphaCraze and BTI entered into a Drop Ship Agreement.  [Doc. #1, Ex. 2]  On July 14, 1999, the parties entered into a Distribution Agreement.  [Doc. #1, Ex. 3]  Under these two contracts BTI shipped items purchased from AlphaCraze directly to customers, and AlphaCraze paid BTI for the items and shipping.

On October 3, 1998, Michael Shelton executed a Guarantee in favor of BTI to secure AlphaCraze's line of credit from BTI.  [Doc. #1, Ex. 9]  On July 16, 1999, Jaime also executed a Guarantee in favor of BTI to secure the line of credit.  [Doc. #1, Ex. 11]  To further secure the line of credit, Allen Avery issued a similar Guarantees on August 23, 2000, May, 17, 2001, and December 5, 2001.  [Doc. #1, Ex. 5, 6, 7]  Finally, Laura Avery issued a Guarantee to secure the BTI line of credit on December 5, 2001.  [Doc. #1, Ex. 8]

In 2002, BTI formed a separate wholly-owned operating subsidiary known as BTF through which it filled customer orders, including AlphaCraze customer orders.  On September 22, 2004, AlphaCraze and BTF entered into a Fulfillment and Distribution Agreement ("Fulfillment Agreement") that substantially encompassed the terms of BTI's Drop Ship and Distribution Agreements.  [Doc. #1, Ex. 1]  Contemporaneous with the execution of the  Fulfillment Agreement, Michael Shelton and AlphaCraze executed Guarantees with BTF.  [Doc. 1, Ex. 4, 10]  The Avery defendants did not issue guarantees to BTF.

The Fulfillment Agreement included the following arbitration clause:

2

> 9.6 The parties agree to submit to mediation in Charlotte, North Carolina any dispute, controversy or claim arising out of this Agreement or the matters provided for in this Agreement and which has not been resolved by the parties through an informal process within fifteen (15) days after either party notifies the other that a matter is in dispute. If the matter is not resolved through mediation, within 45 days thereafter the parties will submit the matter for arbitration and settlement in Charlotte, North Carolina in accordance with the Rules of the American Arbitration Association.

In March 2006, AlphaCraze became delinquent in its payments under the Fulfillment Agreement. AlphaCraze has not paid BTF a total of $2.7 million accrued between March 2006 and May 2007.

On December 17, 2007, B&T initiated this action against the defendants asserting claims of: 1) breach of the Fulfillment Agreement by AlphaCraze; 2) breach of the Fulfillment Agreement by AlphaCraze in favor of third party beneficiary BTI; 3) breach of Guarantee against AlphaCraze; 4) unjust enrichment against AlphaCraze; 5) quantum meruit against AlphaCraze; 6) breach of Guarantee against Allen Avery; 7) breach of Guarantee against Laura Avery; 8) breach of Guarantee against Michael Shelton; 9) breach of Guarantee against Jaime; and 10) fraudulent conveyance and violation of the Connecticut Uniform Transfer Act against Michael and Brandi Shelton, alleging that Michael Shelton transferred his assets to Brandi Shelton to avoid collections on any debt owed B&T.[1] [Doc. #1]

---

[1]On July 10, 2008, B&T filed an amended complaint, after the Avery defendants motion to dismiss had been fully briefed and was ripe for the court's consideration. [Doc. #57] The court has reviewed the amended complaint and

On February 5, 2008, a default entered against AlphaCraze. [Doc. #25] A motion for default judgment against AlphaCraze is pending. [Doc. #35] On February 7, 2008, a default entered against Jaime. [Doc. #27] On March 18, 2008, the court set aside the entry of default as to Jaime. [Doc. #44] On March 31, 2008, B&T moved for reconsideration of the court's order setting aside the default entered against Jaime. [Doc. #47] The motion for reconsideration remains pending. The Sheltons filed a Chapter 7 petition in the United Bankruptcy Court for the District of Connecticut which is still pending. [Doc. No. 08-50078 AS] Any action to collect a debt from the Sheltons is stayed. See 11 U.S.C. § 362.

## II. Standard

"In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). "To survive dismissal, the plaintiff must provide the grounds upon which her claim rests through factual allegations sufficient to raise a right to relief above the speculative level." Camarillo v. Carrols Corp., 518 F.3d 153, 156 (2d Cir. 2008) (internal quotation omitted).

"The plaintiff's factual allegations must be enough to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007). "While a

---

finds that its reasons for granting the motion to dismiss are not altered by B&T's amended complaint and this ruling is not affected.

4

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).

### III. Discussion

### A. The Avery Defendants' Motion to Dismiss

The Avery defendants raise several arguments in favor of dismissing all claims against them in their motion to dismiss. [Doc. #28] The court need only consider the binding arbitration clause in the Fulfillment Agreement to reach its conclusion.

"It is familiar law that the Federal Arbitration Act, 9 U.S.C. § 1 et seq., expresses 'a liberal federal policy favoring arbitration agreements' and that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc., 252 F.3d 218, 223 (2d Cir. 2001) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). The Federal Arbitration Act provides that written agreements to arbitrate involving interstate commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court just reiterated the primacy of the Federal Arbitration Act, including those not involving federal statutes. See Preston v. Ferrer, 128 S. Ct. 978 (2008).

5

"The Second Circuit has adopted a two-part test for determining arbitrability of claims not involving federal statutes: (1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute at issue comes within the scope of the arbitration agreement." ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 28 (2d Cir. 2002).

The complaint establishes that B&T is attempting to collect $2.7 million due and owing under the Fulfillment Agreement. The first paragraph of the complaint that includes factual allegations - paragraph 11, immediately following the establishment of venue and jurisdiction - sets forth the terms and conditions of the Fulfillment Agreement. The complaint then explicitly states that "[d]espite demand, AlphaCraze has not paid Plaintiffs approximately $2.7 million for transactions made from March 2006 to May 2007 *pursuant to the Fulfillment Agreement.*" [Doc. #1, para. 32] (emphasis added).

The subject agreement prescribes arbitration. Both in its complaint and its opposition to the motion to dismiss, B&T takes great pains to tie the Distribution Agreement, the Drop Ship Agreement, and the various Guarantees to the Fulfillment Agreement. This complicated web of interlinking parts is supported by various legal theories which are advanced to support the proposition that B&T is entitled to collect a debt admittedly arising from an alleged breach of the Fulfillment Agreement from defendants who are neither parties to nor guarantors of that agreement. It is indisputable that the Fulfillment Agreement includes an arbitration clause that prescribes arbitration of "any dispute, controversy or claim

arising out of this Agreement or the matters provided for in this Agreement." The parties clearly agreed to arbitrate.

The parties to the Fulfillment Agreement committed to arbitrate the dispute at issue. The parties' agreement to arbitrate is broad and unequivocal, not conditional or optional. It states that the parties "will submit" to arbitration "any dispute, controversy or claim arising out of this Agreement or the matters provided for in this Agreement." It is indisputable that the plaintiffs' claim that the defendants owe it a debt stemming directly from a breach of the Fulfillment Agreement is a dispute, controversy or claim arising out of that agreement and which the parties agreed unequivocally to arbitrate. See Louis Dreyfus Negoce S.A., 252 F.3d at 225 ("When parties use expansive language in drafting an arbitration clause, presumably they intend all issues that 'touch matters' within the main agreement to be arbitrated.").

The allegations in the complaint support this conclusion, and B&T cannot escape the outcome by relying on end-around legal theories involving secondary parties and agreements. See Oldroyd v. Elmira Sav. Bank, 134 F.3d 72, 77 (2d Cir. 1998) ("In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted."). See also Mehler v. Terminix Int'l Co. L.P., 205 F.3d 44 (2d Cir. 2000).

B&T's opposition cites to only one, unreported Magistrate Judge's recommended ruling to support an argument that the arbitration clause does not

bar their claims against the Avery defendants because the Guarantees do not include separate arbitration clauses. See Discover Re Managers, Inc. v. Preferred Employers Group, Inc., 3:05-cv-809 (WWE), Doc. #45 (D. Conn. Mar. 1, 2006). Reliance on that decision is misplaced. In that case, the subject matter of the dispute arose under an agreement without a mandatory arbitration clause. The Magistrate held that the mandatory arbitration clause in an unrelated agreement between the parties could not be imputed onto the agreement that was the subject of the dispute. The current case is in fact the opposite scenario, as the subject matter of B&T's claims is a debt arising out of the Fulfillment Agreement that clearly includes a mandatory, binding arbitration clause. The failure to honor a guarantee of the Fulfillment Agreement is a controversy undisputably arising out if the Fulfillment Agreement.

Based on the allegations in the complaint and the clear, unambiguously broad language of the Fulfillment Agreement's binding arbitration clause, B&T's claims against the Avery defendants are barred. The motion to dismiss must be GRANTED.

B. Claims Against AlphaCraze, Jaime, Michael Shelton and Brandi Shelton

B&T's claims against AlphaCraze, Jaime, Michael Shelton and Brandi Shelton all stem from the same debt allegedly owed under the Fulfillment Agreement. These claims are barred by the Fulfillment Agreement's arbitration clause for the same reasons as the claims against the Avery defendants and must be dismissed.

A default has entered against AlphaCraze. B&T requests that the court reinstate the default entered against Jaime. Michael Shelton and Brandi Shelton have not participated in these proceedings and have sought protection from the bankruptcy court. The absent or uncertain status of these defendants does not alter the court's thinking or position. "[A] default judgment deems all the well-pleaded allegations in the pleadings to be admitted." <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.</u>, 109 F.3d 105,108 (2d Cir. 1997). As explained above, the complaint admits that the subject matter of the dispute arises under the Fulfillment Agreement, and the arbitration clause included in that agreement and appended to the complaint as an exhibit prevents the court from entering judgment against any defendants appearing in this case, in default, or in absentia.

All claims against all defendants must be dismissed.

IV.  Conclusion

Based on the foregoing reasoning, the Avery defendants' motion to dismiss is GRANTED, and all remaining claims against all defendants are DISMISSED. The Fulfillment Agreement's arbitration clause bars B&T's claims arising out of that agreement.

The clerk shall terminate this action.

IT IS SO ORDERED.


                              /s/

**Vanessa L. Bryant**
**United States District Judge**


**Dated at Hartford, Connecticut: August 6, 2008.**